[No. 1689.]

### D. W. MAY v. THE STATE.

1. SWINDLING — FALSE PRETENSE — INDICTMENT.— See the opinion *in extenso* for an indictment *held* sufficient to charge the offense of swindling. Note also the definition of "false pretense" as an element of that offense.

2. SAME — PRACTICE — EVIDENCE — CASE APPROVED.— On a former appeal of this case (15 Texas Ct. App., 430), it was correctly *held* that, under article 2254 of the Revised Statutes, the certificate of a notarial act of protest of a draft made by a notary public of another State is admissible in evidence in this State for the purpose of proving the protest of the draft, but not to prove

any other issue in the case. But note in the opinion that Hurt, Judge, dissenting, holds such evidence inadmissible for any purpose in the present case, because irrelevant to any issue.

3. Same — Charge of the Court. — In charging the jury upon the effect of the protest of the draft as evidence, the trial court instructed the jury that "the protest is only evidence of the facts therein recited, but the same may be considered by the jury as a circumstance in connection with all the other evidence in the case." *Held*, by a majority of the court, correct.

Appeal from the District Court of McLennan. Tried below before the Hon. B. W. Rimes.

This is an appeal from a second conviction for swindling, a term of two years in the penitentiary being the penalty assessed against the appellant. The former report of this case, which will be found on p. 431 of Vol. XV of these Reports gives a statement of the case.

*Clark & Dyer* and *Herring & Kelly* filed an able and exhaustive brief for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

Hurt, Judge. Appellant May was indicted and convicted of swindling, and, on appeal to the last Galveston term, the judgment was reversed because of error in the charge of the court. At the May term, 1884, of the district court of McLennan county, he was again tried and convicted, and again appeals, and asks a reversal of the judgment upon three grounds:

1st. The insufficiency of the indictment.

2d. Error of the court in admitting testimony; and

3d. Charge of the court without proper basis in evidence.

More than one pretense is charged in the indictment. 1st. That he, appellant, represented and pretended to C. H. Jones that he was the duly authorized and empowered advertising agent of Steele & Price, a commercial and manufacturing firm, having headquarters at the city of Chicago, in the State of Illinois. 2d. That appellant presented to said C. H. Jones a certain false and fraudulent draft upon said Steele & Price, for the sum of $50, "telling and representing to him, Jones, that one Geo. W. Cleveland had informed him that he, the said D. W. May, could have the draft cashed by his, Cleveland's, firm, and could procure from him, the said C. H. Jones, the sum of money named and set out in said draft upon Steele & Price aforesaid, and for him, the said Jones, to pay it."

We will remark in passing that it is a very difficult matter, from

this indictment, to select and separate the matter spoken by appellant from the descriptive matter inserted by the pleader. But of this there is no complaint from appellant.

1st. Pretense: In regard to this it will be observed that the indictment does not allege that May represented or pretended that he had power or authority to draft upon Steele & Price; it simply charges that he pretended and represented to Jones that he was the agent of this firm. And it is evident to us from the indictment and charge of the court that this pretense was not relied on as within itself sufficient to charge the offense. By the charge of the court the jury are required to believe from the evidence that defendant made *all* the pretenses, and that *all* were false, before they would be authorized to convict him. Again, if relied upon, there is no proof that he was not the agent of Steele & Price, or, rather, no sufficient proof.

2d. Were the pretenses designated by us above *as charged in the indictment sufficient* to reveal to us, looking alone to the indictment, the commission of the offense of swindling? Taking as true the allegations of the indictment, does it affirmatively appear, from the indictment itself, that defendant is guilty of acts constituting the offense for which he stands convicted? Let us again refer to these representations and pretenses: "That May, the appellant, intending to cheat and defraud said Jones, did then and there present to him, the said Jones, a certain draft upon the said Steele & Price, for the sum of $50, telling and representing to him, said Jones, that one Geo. W. Cleveland had informed him that he, the said D. W. May, could have the draft cashed by his, Cleveland's, firm, and could procure from him, said Jones, the sum of money named and set out in said draft upon said Steele & Price aforesaid, and for him, said Jones, to pay it." There is a distinct averment that these pretenses were false and were made by defendant knowingly.

Counsel for appellant insists that the indictment is bad "because it fails to charge any connection between Jones and Cleveland's firm, or to show how Cleveland's statement could affect Jones in the disposition of his money." The substance of the appellant's objection to the indictment is that the pretense *as therein charged* is not calculated to mislead a person of ordinary prudence, and that, therefore, to make it such, the indictment should have alleged the connection between Cleveland and Jones, or stated facts explaining how Jones was imposed on and induced to part with his money upon the request of Cleveland. Unquestionably this course

would have been the correct mode of pleading; but the question here presented is, whether this indictment is sufficient, without allegations showing the connection between Cleveland and Jones, or how the request of Cleveland conveyed to Jones by appellant could have induced Jones to part with his money. It is insisted by counsel for appellant that the pretenses *as stated in the indictment*, without explanatory allegations, are frivolous, and are not such as would have the effect to cause a prudent man to part with his money.

In treating upon this subject, Mr. Bishop says:

"Sec. 433. . . . There remains one question not quite free from difficulty. We saw, in the preceding volume, that, as a general proposition, the criminal law is not administered on the plan of giving a particular protection to the weak and feeble; and we shall presently see that a false pretense, to be indictable otherwise than as an attempt, must be successful. It is plain, therefore, that a device so shallow as to be incapable of imposing on *any* person cannot constitute a false pretense. But must the pretense be such as is calculated to mislead men of ordinary prudence? Some of the older cases lay down the doctrine that it must. But, in reason, and it is believed according to the better modern authorities, a pretense calculated to mislead a weak mind, if practiced on such a mind, is just as obnoxious to the law as one calculated to overcome a strong mind, practiced on the latter.

"Sec. 434. Caton, J., in an Illinois case, observed: 'Should an article, the essential value of which consisted in its color, be offered to a person fully possessed of the sense of sight, and with every opportunity for inspection, with the pretense that it was white, when in fact it was black, under such circumstances the false pretense might be very innocent, because it was not calculated to deceive; while the same pretense made to a blind person would be calculated to deceive, and might subject the party to punishment.' And the same truth is applicable to the possession and lack of the other faculties of the human understanding. Therefore, the doctrine that, in the language of Russell, the pretense 'need not be such an artificial device as will impose upon a man of ordinary caution,' is fully established, at least in the English courts. At the same time there may be devices too frivolous for the law to notice. And the pretense need not be such — a proposition not essentially differing from the last — as cannot be guarded against by common prudence.

"Sec. 436. Practically it is impossible to estimate a false pre-

tense otherwise than by its effect. It is not an absolute thing, to be handled and weighed as so much material substance; it is a breath issuing from the mouth of a man, and no one can know what it will accomplish except as he sees what in fact it does. Of the millions of men on our earth, there is not one who would not be pronounced by the rest to hold some opinion, or to be influenced in some affair, in consequence of considerations not adapted to affect any mind of ordinary judgment and discretion. And no man of business is so wary as never to commit, in a single instance, a mistake such as any jury would say on their oath could not be done by a man of ordinary judgment and discretion. These things being so, plainly a court cannot, with due regard to the facts of human life, direct a jury to weigh a pretense, an argument, an inducement to action, in any other scale than that of its effect." (2 Bish. Cr. L., 7th ed.)

We are of the opinion that the indictment is sufficient.

The second ground for reversal urged by appellant is that the court erred in admitting evidence over objections of defendant. It appears, by bill of exceptions, that in connection with the draft the prosecutor was permitted to read in evidence the notarial act of protest of the draft, made by James P. Lowe, notary public in the city of Chicago, county of Cooke, State of Illino's. Two objections are relied on, why the certificate of protest is not admissible in evidence in this case: " 1st. Because a certificate of protest of a notary public of another State is not competent evidence against a defendant on a prosecution for felony in this State. 2d. Because said instrument does not tend to prove any issuable fact in this case, and are, therefore, irrelevant."

When this case was before us at Galveston, the competency of this evidence was discussed at great length by Presiding Judge White, and in the opinion then declared (which is now published in 15 Texas Ct. App., 431) it is held that this certificate of protest was " simply admissible, and could only be received, as evidence of the facts therein stated," and that the fact that the draft was protested was a circumstance to be weighed by the jury in connection with the other facts in the case. A majority of this court still hold it admissible for the above purpose, and that it can be considered in connection with other evidence in the case.

The writer did not dissent from the opinion of Presiding Judge White when delivered at Galveston, but, after further reflection, he is of the opinion that the certificate of protest, under the facts of this case, is not admissible for any purpose whatever. Let us exam-

ine our opinion at Galveston, briefly: We say that the certificate " was simply admissible, and could only be received, as evidence of the facts therein stated." What facts are therein stated? None whatever save that the draft was on the 26th of November, 1883, " protested for non-payment." Now let us see under the allegations of the indictment and the other proof in the case, what issue of fact this protest for non-payment could tend to solve. The only question of fact in regard to which it could possibly be relevant and admissible is the fact of agency. It is charged in the indictment that appellant pretended to be the agent of Steele & Price, upon whom the draft was drawn, and that this pretense was false, be-cause, in fact, he was not their agent. It devolved upon the State to prove that appellant was not the agent of Steele & Price, and hence, if the protest does not tend to prove this negative fact, it tends to prove no issuable fact in the case. Could it prove that de-fendant was not the agent of Steele & Price? We say in our opin-ion at Galveston: "It could not and did not prove that the defendant was not the agent of Steele & Price." If, therefore, it could not prove that defendant was not the agent of Steele & Price, it was, most evidently, inadmissible because irrelevant. It may be urged, however, that it *tended to prove* that defendant was not the agent of Steele & Price. But we say, in the Galveston opinion, that " It could not prove that defendant was not the agent of Steele & Price." If, therefore, it was not competent to prove that defendant was not their agent, certainly its tendency to make such proof was inadmissible, either alone or in connection with other facts in the case, which did tend to prove that defendant was not the agent of Steele & Price.

My views on this subject are, briefly stated, as follows: If, under the pleadings, or the other evidence in the case (for a fact is frequently admissible because of the other facts in the case), it be material to prove that a draft has been protested, the certificate of protest is admissible in a criminal as well as a civil case. But if it be material to prove in a prosecution for felony that the drawer had no funds in the hands of the drawee, or that the drawer was not authorized to draw upon the drawee, the protest is not admissible. I am of the opinion that the court erred in admitting in evidence the certificate of protest, for any purpose, because irrelevant, and its admission was clearly calculated to injure the rights of the appellant.

Nor does the charge of the court relieve the case from injurious consequences resulting from the admission of this protest in evi-

dence. The jury are told that "the protest is only evidence of the facts therein recited, but the same may be considered by the jury as a circumstance in connection with all the other evidence in the case." Under this charge the jury were at liberty to receive the protest and use it as evidence to prove the fact which it tended to prove. And while it may have tended to prove remotely divers facts, the jury would, and likely did, construe the certificate into proof of the fact that appellant was not the agent of Steele & Price. For this purpose the protest could not be used, and hence, as there was no other fact in the case upon which the protest could possibly bear, it was not admissible, and was, most evidently, calculated to impress the jury with the belief that appellant was not the agent of Steele & Price.

However, when this case was before us at Galveston, the judgment was reversed because the court below, by proper instructions, failed to limit the effect of this evidence and the extent to which the jury were authorized to consider it as evidence in the case. Upon the last trial this defect in the charge was cured by proper instructions.

We would call attention to the opinion of Presiding Judge White, reported in the 15th Texas Ct. App., 430. In this opinion will be found a thorough and masterly discussion of the question touching the admissibility of a certificate of protest in evidence in a criminal case.

We have examined the other questions presented in the brief of the appellant, but do not think them tenable. It is the opinion of the majority of this court that the judgment should be affirmed.

*Affirmed.*

[Opinion delivered November 26, 1884.]